# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

PAUL L. DOMINIQUE,

                         Plaintiff,

       v.                                     7:12-CV-1731
                                              (DNH/ATB)

COMMISSIONER OF SOCIAL SECURITY,

                         Defendant.

---

LAWRENCE D. HASSELER, ESQ.
for Plaintiff

DENNIS J. CANNING
PETER W. JEWETT
Special Asst. U.S. Attorneys, for Defendant

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

This matter was referred to me for report and recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to 28 U.S.C. § 636 (b) and Local Rule 72.3(d). This case has proceeded in accordance with General Order 18.

## I.   <u>PROCEDURAL HISTORY</u>

On December 7, 2009 plaintiff protectively filed[1] his application for supplemental security income ("SSI"), claiming disability beginning March 30, 2005. Plaintiff's application was denied initially on March 24, 2010, and he requested a

---

[1] When used in conjunction with an application for benefits, the term "protective filing" indicates that a written statement, "such as a letter," has been filed with the Social Security Administration, indicating the claimant's intent to file a claim for benefits. See 20 C.F.R. § 404.630. There are various requirements for this written statement. *Id.* If a proper statement is filed, the Social Security Administration will use the date of the written statement as the filing date of the application even if the formal application is not filed until a future date.

hearing before an ALJ (Administrative Transcript ("Tr.") 10). The video hearing, at which plaintiff testified, was conducted on August 10, 2011. (Tr. 23-54).

In a decision dated October 28, 2011, the ALJ found that plaintiff was not disabled. (Tr. 10-18). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on September 27, 2012. (Tr. 1-4).

## II. FACTS

Plaintiff suffered comminuted fractures to his left distal tibia and fibula following a fall from a roof during work on March 30, 2005. (*See, e.g.,* Tr. 376, 383). Plaintiff underwent two surgeries to repair the fracture. (*See, e.g.*, Tr. 517, 452). Since the accident, plaintiff has had pain in his left ankle and a decreased range of motion. Plaintiff has also developed back and neck pain and suffers from moderate disc disease. (*See, e.g.,* Tr. 391). Plaintiff's counsel has included a detailed summary of the facts in his brief. (Pl. Br. at 1-11). Defendant's counsel has incorporated the plaintiff's summary and the ALJ's statement of facts into his brief. (Def. Br. at 2). This court will also incorporate the facts as stated by the ALJ and both counsel, with any exceptions as noted in the discussion below.

## III. ALJ'S DECISION

The ALJ found that plaintiff has not engaged in substantial gainful activity since the application date. (Tr. 12). The ALJ further found that plaintiff suffered from two severe impairments–a fractured left ankle, resulting from a fall off a roof in 2005, and cervical and lumbar disc disease. (Tr. 12, 15). The ALJ also addressed plaintiff's right wrist pain, but found that it did not constitute a severe impairment because the

x-rays were normal, and no functional limitations were established with respect to that impairment. (Tr. 12). Next, the ALJ considered whether plaintiff's impairments met the severity of the listed impairments. (Tr. 13). Explicitly considering listings 1.02 and 1.04, the ALJ concluded that plaintiff's impairments did not meet the requirements of either section. (*Id.*).

The ALJ next found that plaintiff had the residual functional capacity to perform a full range of sedentary work except for activities involving climbing ladders/ropes/scaffolds, vibrations, and pushing or pulling with the left lower extremity. (Tr. 13). The ALJ explained that in making this finding, he considered plaintiff's symptoms and opinion evidence in accordance with the applicable regulations. In evaluating the credibility of plaintiff's claimed symptoms he explained the two step process that he must follow: first, determining whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms; and second, evaluating the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's functioning. (Tr. 13).

The ALJ discussed the Workers' Compensation exam performed by Dr. Joseph Ortiz in 2007, observing that Dr. Ortiz opined that plaintiff's work "would have to be of a clerical nature in the sitting position" and he would need "to avoid prolonged standing and walking." (Tr. 13-14). The ALJ also discussed the opinion of one of plaintiff's treating physicians, Dr. Roger Sullivan, who treated plaintiff for back, neck, and ankle pain. (Tr. 14). The ALJ noted that Dr. Thomas Kristiansen found that plaintiff suffered from post-traumatic arthritis, which would eventually require an

ankle fusion. (Tr. 14). The ALJ also had the benefit of a consultative examination by Dr. Nader Wassef, and an evaluation by Dr. Ayaz Khan. (Tr. 14-15). Finally, the ALJ addressed the opinion of Dr. Elizabeth Logalbo, who completed a very restrictive Medical Source Statement. The ALJ gave "less weight" to this opinion, finding it "inconsistent with her treatment and . . . exaggerated." (Tr. 15). The ALJ further explained that Dr. Logalbo[2] only began treating plaintiff in December 2010, and that although her Medical Source Statement contained significant limitations, they were not supported by the remaining medical evidence–either by her own records or those from Drs. Sullivan, Kristiansen, and Wassef. (Tr. 16).

The ALJ also addressed plaintiff's complaints of major cramping in his left foot, bone spurs, and arthritis, back and neck stiffness, right wrist cramping, and left wrist weakness. (Tr. 15). The ALJ noted that plaintiff takes Vicodin every day, Motrin/Tylenol 6-8 times a week, and that the Vicodin helps but never takes away the pain. (Tr. 15). The ALJ found plaintiff's statements regarding the intensity, frequency, and limiting nature of his impairments to be not totally credible, considering the factors outlined in Social Security Ruling 96-7p. (Tr. 16). The ALJ further explained that Dr. Sullivan opined that plaintiff's ankle pain was controlled with Vicodin, and his back pain was stable; Dr. Kristiansen opined that plaintiff needed an ankle fusion and removal of the hardware, but plaintiff put off the surgery. (Tr. 16). Additionally, although plaintiff alleged restricted activities of daily living, the ALJ found that plaintiff's use of medication and course of medical treatment are

---

[2] The court notes that the ALJ mistakenly refers to Dr. Logalbo as Dr. Lobello at one point in his decision. Tr. 16. However, it is clear to the court that he is referring to Dr. Logalbo.

inconsistent with greater limits and that his impairments appear to be adequately controlled with conservative treatment and Vicodin. (Tr. 17). Plaintiff has not increased the frequency of his treatment, has had no emergency care, and refused epidural steroid injections, instead requesting to simply continue with narcotic medications. (*Id.*).

Next the ALJ found that plaintiff is unable to perform his past relevant work as a construction laborer, but that considering his RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, plaintiff was able to perform a full range of sedentary work. In making this determination, the ALJ noted that postural limitations or restrictions related to activities such as climbing ladders, ropes, or scaffolds, vibrations, pushing and pulling would not usually erode the occupational base for a full range of unskilled sedentary work significantly, because those activities are not usually required in sedentary work. (Tr. 17-18).

## IV.  APPLICABLE LAW

### A.  Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of

5

substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920 to evaluate disability insurance and SSI disability claims.

First, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Commissioner next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Commissioner will consider him [per se] disabled . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Selian v. Astrue*, 708 F.3d 409, 417-18 (2d Cir. 2013) (quoting *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012)); *see* 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's residual

functional capacity"); *Selian*, 708 F.3d at 418 & n.2.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d at 417 (quoting *Talavera v. Astrue*, 697 F.3d at 151; *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).  Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Talavera*, 697 F.3d at 151 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'"  *Brault*, 683 F.3d at 448.

In order to determine whether an ALJ's findings are supported by substantial evidence, the reviewing court must consider the whole record, examining the evidence from both sides, "'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'"  *Petrie v. Astrue*, 412 F. App'x 401, 403-404 (2d Cir. 2011) (quoting *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988)).   However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support of the ALJ's decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (citing *Williams*, *supra*).

## V.    <u>ISSUES IN CONTENTION</u>

Plaintiff makes the following claims:

(1)     The ALJ failed to properly consider the posttraumtic arthritis in plaintiff's left ankle a "severe" impairment. (*See* Pl. Br. at 12-14) (Dkt. No. 11).

(2)     The ALJ improperly failed to afford controlling weight to the opinion of Dr. Logalbo. (Pl. Br. at 15-18).

(3)     The ALJ failed to make the required findings when assessing plaintiff's credibility. (Pl. Br. at 19).

(4)     The ALJ failed to properly assess plaintiff's RFC. (Pl. Br. at 19-23).

Defendant argues that the Commissioner's decision is supported by substantial evidence and must be affirmed. (Dkt. No. 12).

## VI.    DISCUSSION

The court concludes, for the reasons set forth below, that the ALJ properly evaluated the opinion of Dr. Logalbo and the credibility of plaintiff's statements about his symptoms and limitations. The court also finds that the ALJ appropriately evaluated the severity of all of plaintiff's impairments and that substantial evidence supports the ALJ's RFC determination. Accordingly, it is recommended that the decision of the Commissioner be affirmed and plaintiff's complaint dismissed.

### A.    Severe Impairment

#### 1.    Legal Standards

The claimant bears the burden of presenting evidence establishing severity at Step 2 of the disability analysis. *Briggs v. Astrue*, No. 5:09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011) (Report-Recommendation), *adopted*, 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work

activities.  *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at Step 2 if it does not significantly limit a claimant's ability to do basic work activities).  The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).  It is quite clear from these regulations that "severity" is determined by the limitations imposed by an impairment, and not merely its by diagnosis.  The "presence of an impairment is . . . not in and of itself disabling within the meaning of the Act."  *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995) (citations omitted).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'"  *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3).  The Second Circuit has held that the Step 2 analysis "may do no more than screen out de minimis claims."  *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995).  If the disability claim rises above a de minimis level, then the remaining analysis of the claim at Steps 3 through Step 5 must be undertaken.  *Id.* at 1030.

Often when there are multiple impairments, and the ALJ finds some, but not all of them severe, an error in the severity analysis at Step 2 may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537, 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244, 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011)). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523, 416.923; *Dixon*, 54 F.3d at 1031.

## 2. Application

Plaintiff argues that the ALJ erred by failing to find plaintiff's post-traumatic arthritis a severe impairment, claiming that the ALJ failed to mention the post-traumatic arthritis in assessing plaintiff's impairments. (Pl. Br. at 13). However, plaintiff fails to recognize that the post-traumatic arthritis in plaintiff's left ankle is a result of the fracture he sustained on March 30, 2005, and the ALJ specifically found that plaintiff's fractured left ankle was a severe impairment. (Tr. 12). Additionally, the ALJ discussed plaintiff's pain and other symptoms in his left ankle which stem from his ankle fracture and the resulting post-traumatic arthritis. Plaintiff does not point to any specific symptoms caused by the posttraumatic arthritis that were not considered by the ALJ. Moreover, the ALJ mentioned plaintiff's post-traumatic arthritis in his opinion. (Tr. at 14). The ALJ considered the effect of plaintiff's post-traumatic arthritis throughout his opinion, therefore, any error in finding that it was

not a severe impairment separate and apart from the broken ankle would have been harmless.

## B.    RFC/Treating Physician/Credibility

### 1.    Legal Standards

#### a.    RFC

In rendering a residual functional capacity (RFC) determination, the ALJ must consider objective medical facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Id.* (citing, *inter alia*, *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)).  RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations.  *Id.* (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Trail v. Astrue*, 5:09-CV-1120 (DNH/GHL), 2010 WL 3825629, at *6 (N.D.N.Y. Aug. 17, 2010) (citing SSR 96-8p, 1996 WL 374184, at *7).

Although the RFC determination is reserved for the commissioner, the RFC assessment is still a medical determination that must be based on medical evidence of record, and the ALJ may not substitute his own judgment for competent medical opinion.  *Walker v. Astrue*, No. 08-CV-828, 2010 WL 2629832, at *6 (W.D.N.Y. June

11, 2010) (citing 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2)) (*Report-Recommendation*), *adopted*, 2010 WL 2629821 (W.D.N.Y. June 28, 2010); *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-CV-1225, at *3 (N.D.N.Y. Aug. 2, 2005)). In addition to the plaintiff's own physicians and other medical sources, the ALJ may rely upon a "medical advisor" who is a non-examining state agency "medical consultant" or an examining consultative physician to whom the plaintiff was sent at agency expense. *See Walker v. Astrue*, 2010 WL 2629832 at *6-7. "It is the function of the [Commissioner], not [the reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Aponte v. Sec'y, Dep't of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir.1984); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (genuine conflicts in the medical evidence are for the Commissioner to resolve).

### b. Treating Physician

"Although the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, . . . the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record . . . ." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2004); *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002); *see also Kennedy v. Astrue*, 343 F. App'x 719, 721 (2d Cir. 2009) (declining to afford great weight to the treating physician's "check-off form regarding residual functional capacity" explaining that a treating physician's opinion need not be given great weight when it is not consistent with other substantial evidence of record, including the opinions of other medical experts) (citing *Halloran*).

When controlling weight is not given, the ALJ should consider the following factors to determine the proper weight assigned to a treating physician's opinion: (1) frequency of the examination and the length, nature, and extent of the treatment relationship; (2) the evidence in support of the opinion; (3) the opinion's consistency with the record as a whole; and (4) whether the opinion is from a specialist. *See* 20 C.F.R. § 404.1527(c); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). The ALJ must properly analyze the reasons that the report of the treating physician is rejected. *Halloran*, 362 F.3d at 32-33.

### c.    Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'" *Lewis v. Apfel*, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting *Gallardo v. Apfel*, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. *See* 20 C.F.R. § 404.1529; *see also Foster v. Callahan*, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. March 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . . ." 20 C.F.R. § 404.1529(a). Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ

need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work. *Id.* § 404.1529(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. *Id.* § 404.1529(c)(3).

### 2. Application

#### a. Treating Physician

The ALJ found that plaintiff could perform a full range of sedentary work except for activities involving ladders/ropes/scaffolds, vibrations and pushing or pulling with the left lower extremity. (Tr. 13). In making this determination, the ALJ gave "less weight" to Dr. Logalbo's RFC determination, which limited plaintiff to less than sedentary work. Plaintiff argues that the ALJ erred in the weight he gave Dr. Logalbo's assessment. (Pl. Br. at 15-18). However, this court concludes that there is substantial evidence in the record that is inconsistent with Dr. Logalbo's restrictive RFC.

14

Dr. Logalbo's RFC assessment is set forth in a questionnaire, dated July 21, 2011 and updated July 29, 2011. (Tr. 504-09). In this assessment, Dr. Logalbo opines that plaintiff can occasionally and frequently lift less than 10 pounds, stand and walk less than two hours in an 8 hour workday and must periodically alternate sitting/standing.[3] (*Id.*). Dr. Logalbo further opines that pain is present to such an extent as to be distracting to the adequate performance of daily activities or work and that as a result of his medication, plaintiff is restricted from the workplace and is unable to function at a productive level. (*Id.*). This questionnaire does not provide an explanation for these limitations on plaintiff's ability to sit or his ability to function as a result of his pain and/or medication, nor do any of Dr. Logalbo's office notes. The record includes treatment notes from only two visits with Dr. Logalbo that relate to plaintiff's back, neck, or ankle pain–one on December 16, 2010, and one seven months later on July 20, 2011.[4] (Tr. 486, 503). The Medical Source Statement was completed the following day.

When deciding to afford "less weight" to the opinion of Dr. Logalbo, the ALJ noted that it "is inconsistent with her treatment and seemed to be exaggerated." (Tr. 15). The ALJ further explained that the limitations described in Dr. Logalbo's

---

[3] This appears to have been updated on 7/29/11 from a response indicating that sitting is not affected by the impairment. (Tr. 505).

[4] The court has assumed for purposes of this opinion that Dr. Logalbo is a "treating physician." However, the court notes that a doctor who has seen a patient on such a limited basis may not be considered a treating physician. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("[A] physician who only examined a claimant 'once or twice' did not see that claimant regularly and did not develop a physician/patient relationship with the claimant," therefore, "such a physician's opinion [is] not entitled to the extra weight of that of a treating physician." (internal quotation marks omitted)).

assessment are not supported by the objective medical evidence provided by Drs. Sullivan, Kristiansen, and Wassef and not supported by her own records. Of significance to the ALJ, and to this court, is the limited treatment that Dr. Logalbo provided plaintiff. *See* 20 C.F.R. § 416.927(c)(2) (explaining that the more knowledge the treating source has about the plaintiff's impairments, considering the treatment the source has provided and the kinds and extent of examinations, the more weight the opinion is given). It is unlikely that Dr. Logalbo acquired information in these two visits with plaintiff that would enable her to provide the "detailed, longitudinal picture of [plaintiff's] medical impairment" that the regulations envision a treating source would provide or to "bring a unique perspective to the medical evidence." 20 C.F.R. § 416.927(c)(2).

Additionally, the remaining documentation in the record is inconsistent with Dr. Logalbo's assessment. The ALJ reviewed medical records from: Dr. Kristiansen, who performed the two operations on plaintiff's ankle and continued to treat plaintiff throughout the relevant time period; Dr. Ortiz, who examined plaintiff three times at the request of Workers' Compensation; Dr. Sullivan, plaintiff's treating physician who treated plaintiff periodically throughout 2006, 2007, 2008, and 2009; Dr. Khan, a pain management consultant; and Dr. Wassef, a consultative examiner.

Following plaintiff's fall from the roof, Dr. Kristiansen performed two surgeries on plaintiff's ankle. (Tr. 517, 452). The record also contains follow-up treatment notes from Dr. Kristiansen following these surgeries. Generally, the notes and x-rays document healed fractures, but persistent pain. (*See, e.g.,* Tr. 446, 414, 445, 459, 602, 579, 546, 489-90, 674). On March 21, 2006, plaintiff stated that "he is generally

comfortable when sitting other than occasionally at the end of the day." (Tr. 459). On December 12, 2006, Dr. Kristiansen noted that although the bone healed, plaintiff was left with severe arthritis in his tibiotalar joint resulting in limited motion and pain. (Tr. 571). At that time, Dr. Kristiansen recommended an ankle fusion within the next 6 months, noting that it was his view that plaintiff needed to get on with his life, and that the surgery would give him significant pain relief. (*Id.*). A few months later, Dr. Kristiansen noted that plaintiff still has pain, and significant difficulty going up and down the stairs due to the limited range of motion. (Tr. 441-42). Dr. Kristiansen also noted that the posttraumatic arthritis in his ankle should be considered permanent, that it could worsen with time, and that plaintiff may benefit from an ankle fusion surgery to relieve his pain. (*Id.*). Dr. Kristiansen further opined that plaintiff was unable to work as a carpenter. (*Id.*). Dr. Kristiansen did not, on the other hand, opine that plaintiff was unable to perform *any* work.

Similarly, three months later, Dr. Kristiansen again noted posttraumatic osteoarthritis in his left ankle, found that plaintiff would not return to work as a carpenter, and stated that plaintiff would return to see the doctor as needed. (Tr. 438-39). On July 29, 2009, Dr. Kristiansen again noted that from a quality of life perspective, the posttraumatic ankle arthritis could be managed with an ankle fusion, but the records indicate that plaintiff wanted to delay it until after the first of the year. (Tr. 489-90). Dr. Kristiansen also observed that he would not treat plaintiff with narcotic pain medication, but would defer that decision to Dr. Sullivan. (*Id.*). On May 29, 2010, Dr. Kristiansen again noted the need for an ankle fusion, and also stated that one of these days plaintiff would have to have his hardware out. (Tr. 491-92).

Beginning in 2007, Dr. Kristiansen also noted pain in plaintiff's back and observed degenerative disc disease. (*See, e.g.,* 438-39, 409-10).

The record contains summaries of three independent medical exams conducted by Dr. Ortiz on October 19, 2005, March 16, 2006, and August 9, 2007, and a physical capabilities form completed on August 13, 2007. (Tr. 632-36, 603-07, 554-57, 567). Based on his examinations of plaintiff, Dr. Ortiz found that as a result of the pain and limitation of movement in plaintiff's left ankle, any work performed "would need to be of a clerical nature." Dr. Ortiz further explained that plaintiff would need to avoid prolonged standing and sitting; and found that plaintiff was capable of 6 hours of sitting, 6 hours of standing with rests, and 6 hours of walking with rests. (Tr. 555, 567).

Dr. Sullivan's treatment notes document back, neck, and ankle pain controlled with Vicodin. (*See* Tr. 394, 393, 391, 390). In 2009 Dr. Sullivan noted some concerns with continuing narcotic pain medication, (*see* Tr. 390, 389), however it appears that the medication was continued. (*See* Tr. 390, 42). Additionally, in a number of visits with Dr. Sullivan, plaintiff did not complain of ankle pain. (*See, e.g.,* Tr. 394, 389). Dr. Khan at the pain management clinic performed a consultative exam on March 16, 2010. (Tr. 682-85). Dr. Khan noted plaintiff's lower back pain, left ankle pain and osteoarthritis in his left ankle. According to plaintiff, activities of all kinds increased his pain. When plaintiff refused interventional pain injections, Dr. Khan referred plaintiff back to Dr. Suillivan for continued medical management with the advice that narcotic medications are not the answer for plaintiff's pain. Dr. Khan further observed that he "would suspect [plaintiff's] intentions at this time." (Tr. 684-

85).

Dr. Wassef consultatively examined plaintiff on March 5, 2010. (Tr. 468-72). Dr. Wassef noted plaintiff's ankle fracture, mid and lower back pain, which plaintiff described as aggravated by physical activity. (*Id.*). Plaintiff needed Dr. Wassef's help to dress and undress, but needed no assistance getting on and off the exam table, and had no difficulty rising from the chair. (*Id.*). The exam showed full flexion, extension, lateral flexion and rotary movement in plaintiff's cervical and lumbar spine; there was no abnormality of the thoracic spine, and the straight leg raising rest was negative bilaterally. (*Id.*). Dr. Wassef opined that plaintiff had moderate limitation of movement of his left ankle. (*Id.*)

The record also contains an assessment by a Dr. Cody, who found that plaintiff was in no acute distress, he moved around the room easily, and his cervical posture was normal. Dr. Cody assessed that plaintiff had residual cervical pain from his accident and recommended chiropractic care and physical therapy. (Tr. 440).

The ALJ undertook a thorough assessment of the evidence of record. The court concludes that there is substantial evidence that is inconsistent with the assessment of Dr. Logalbo and supports the ALJ's decision to afford her opinion "less weight."

### b. Credibility

Plaintiff next argues that the ALJ failed to properly assess plaintiff's credibility. (Pl. Br. at 19). Specifically, plaintiff argues that the ALJ did not make a finding as to whether plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and that the decision is not sufficiently specific. (*Id.*). This court concludes that the ALJ applied the appropriate two-step credibility standard

and concluded, with sufficient specificity, that plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible.

The ALJ described the two-step credibility standard, noting that after concluding that plaintiff's impairments could reasonably be expected to cause the symptoms alleged, he would evaluate the intensity, persistence, and limiting effects of these symptoms:

> In considering the claimant's symptoms, I must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms. Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, I must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning.

(Tr. 13). After considering plaintiff's statements as to the intensity, frequency, and limiting nature of his impairments, the ALJ found them to be not totally credible. (Tr. 16).

The ALJ explained that he considered plaintiff's "daily activities; precipitating and aggravating factors of the alleged symptoms, including pain; any and all medications prescribed and/or taken; treatment other than medication for relief of pain and other symptoms; prior work history; observations of treating and consulting physicians of record; observations of lay witnesses, if any; and any other factors having a bearing on the claimant's functional limitations or restrictions due to pain and other symptoms." (Tr. 16). More specifically, the ALJ noted that plaintiff's

impairments appeared to be adequately controlled with conservative treatment and Vicodin, he has not sought more frequent treatment, and he refused epidural steroid injections for pain.  (Tr. 16-17).[5]

Additionally, although plaintiff testified that he is severely limited in his daily activities and needs significant help from his wife, as defendant correctly observes, evidence in the record demonstrates that plaintiff is doing more than alleged.  (*See, e.g.,* Tr. 287 (noting a great deal of pain after lifting a toolbox out of the back of his trunk); Tr. 283 (noting an increase in pain after lifting his child overhead); Tr. 282 (reporting pain after lifting cases of water)).

The court finds that the ALJ correctly applied the proper legal standards in assessing plaintiff's credibility and adequately specified the reasons for discrediting plaintiff's statements.  His credibility determination is supported by substantial evidence.

### c.    RFC Determination

The ALJ found, "after careful consideration of the entire record," that the plaintiff "has the residual functional capacity to perform the full range of sedentary

---

[5]  The court further notes that in addition to refusing the steroid injections, at the time of the hearing, plaintiff had apparently not taken Dr. Kristiansen's advice to undergo an ankle fusion.  An ALJ may consider claimant's non-compliance with treatment when evaluating credibility pursuant to Social Security Ruling 96-7p, which provides, in pertinent part, that a claimant's "statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment prescribed."  1996 WL 374186, at *7 (July 2, 1996).  Under that ruling, however, an ALJ must not draw an adverse inference from a claimant's failure to pursue treatment "without first considering any explanation that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment."  *Id.*  The record does not reflect any significant justification for plaintiff's failure to undergo the recommended ankle fusion surgery to address his claimed pain.

work as defined in 20 CFR 416.967(a). Except not ladders/ropes/scaffolds, vibrations and pushing or pulling with the left lower extremity." (Tr. 13). The ALJ's RFC finding clearly accounts for the limited range of motion and pain in plaintiff's left ankle, limiting him to sedentary work, which, according to the applicable regulations:

> involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a) & 416.967(a). The court finds that the ALJ considered, with appropriate specificity, plaintiff's ability to perform the various functions associated with sedentary work–sitting, limited lifting, and occasional walking and standing. (T. 33).[6] The ALJ's conclusion that plaintiff could perform sedentary work, with additional limitations–that he is unable to perform activities involving ladders/ropes/scaffolds, vibrations, and pushing or pulling with the left lower extremity–is supported by substantial evidence in the record (as described above).

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, and plaintiff's complaint **DISMISSED IN ITS ENTIRETY**

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file

---

[6] The court concludes that the ALJ appropriately considered the various functions involved in sedentary work; however, even assuming that he had not, the Second Circuit has held that failure to perform a function by function analysis is not a per se error requiring remand where the ALJ's analysis affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous. *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated: February 25, 2014

Andrew T. Baxter
U.S. Magistrate Judge